(Reap. Dec. 10696)

INTERNATIONAL PACKERS, LIMITED *v.* UNITED STATES

Entry No. 6664.

(Decided March 23, 1964)

*Barnes, Richardson & Colburn* (*Hadley S. King, J. Bradley Colburn,* and *Norman C. Schwartz* of counsel) for the plaintiff.

*John W. Douglas,* Assistant Attorney General (*Daniel I. Auster* and *Sheila N. Ziff,* trial attorneys), for the defendant.

DONLON, Judge: The merchandise here involved is canned roast beef from the Argentine. It was exported from Buenos Aires on August 10, 1959, and entered at Boston on September 10, 1959, after shipment in bond from New York, the port of unlading. Entry was subsequent to February 27, 1958, the date when the Customs Simplification Act of 1956 became effective. It has been stipulated that this beef is an article enumerated in the final list issued by the Secretary of the Treasury (T.D. 54521). Hence, valuation is under the so-called old law, now renumbered as section 402a.

Appraisement was on the basis of United States value. Plaintiff concedes that this basis is proper for customs valuation of the merchandise. The appraiser, in computing United States value, failed to allow deduction of the so-called Argentine retention as one of the items of necessary expense from the place of shipment to the place of delivery of the merchandise, within the purview of section 402a(e), Tariff Act of 1930, as amended and effective with respect to this merchandise at the time of importation. Allowance of that deduction is the only valuation item before the court, plaintiff conceding that the appraiser's action in all other respects was correct.

The facts and issue here are somewhat similar to the facts and issue in *United States* v. *International Packers, Limited,* 48 CCPA 80, C.A.D. 769. However, the Argentine Government, in the interval between the two shipments, superseded the retention there construed with a different provision which was operative as to the merchandise of this litigation. I held in the earlier *International Packers* case, and the appellate term and court of appeals both affirmed, that the Argentine retention, which was effective with respect to export of the beef there involved, was a necessary expense from the place of shipment in the Argentine to the place of delivery in the United States and, therefore, a deduction from United States price in arriving at United States value.

The question here is whether the new retention likewise is such an expense.

This appeal to reappraisement was submitted on the following stipulation of facts:

IT IS HEREBY STIPULATED AND AGREED by and between the parties hereto, subject to the approval of the court, as follows:

1. That the instant appeal for reappraisement is limited to the merchandise covered by invoice No. 2 on the entry, to wit, 1,400 cartons of Libby's roast beef in 12 oz. tins, packed 24 tins per carton.

2. That the involved merchandise was entered for consumption on or after the effective date of the Customs Simplification Act of 1956 (Public Law 927, 84th Congress, T.D. 54165); that the involved merchandise is identified on the Final List published by the Secretary of the Treasury (T.D. 54521), pursuant to said Customs Simplification Act, and that appraisement was accordingly made under the provisions of section 402a of the Tariff Act of 1930 as amended by said act.

3. That on or about the date of exportation, to wit, August 10, 1959, such or similar merchandise was not freely offered for sale for home consumption in Argentina or for export to the United States, and accordingly appraisement was made upon the basis of United States value as defined in section 402a(e) of the Tariff Act of 1930 as amended; that neither party challenges the basis of appraisement.

4. The plaintiff offers in evidence the affidavit of Thomas Charles Skidmore, sworn to before the Vice Consul of the United States at Buenos Aires on May 15, 1963, and supplemented by the affidavit of said Thomas Charles Skidmore, sworn to before the Vice Consul of the United States at Buenos Aires on June 11, 1963; that said affidavits may be admitted in evidence herein as plaintiff's collective exhibit 1 and plaintiff's exhibit 2, respectively.

5. That the documents in Spanish identified as follows consist of true copies of each of the Argentine decrees, laws and regulations specified in plaintiff's collective exhibit 1, said copies being duly authenticated pursuant to 28 U.S.C.A. section 1741, and accompanied by true and correct translations of both the text of said documents and of the authenticating language on the reverse side thereof:

(a) Plaintiff's collective exhibit 3: Decree-law 5168/58, dated April 18, 1958.

(b) Plaintiff's collective exhibit 4: Decree No. 11916, dated December 30, 1958.

(c) Plaintiff's collective exhibit 5: Decree No. 11917, dated December 30, 1958.

(d) Plaintiff's collective exhibit 6: Central Bank Circular R.C. No. 2, dated December 30, 1958.

(e) Plaintiff's collective exhibit 7: Central Bank Circular R.C. No. 3, dated December 30, 1958.

(f) Plaintiff's collective exhibit 8: Central Bank Circular B.232 bis, dated December 30, 1958.

(g) Plaintiff's collective exhibit 9: National Direction of Customs, Resolution I No. 9/59, Circular No. 24, dated January 20, 1959.

(h) Plaintiff's collective exhibit 10: National Direction of Customs, Resolution I No. 65/59, Circular No. 120, dated March 24, 1959.

(i) Plaintiff's collective exhibit 11: National Direction of Customs, Resolution I No. 95/59, Circular No. 157, dated April 20, 1959.

(j) Plaintiff's collective exhibit 12: Central Bank Circular R.C. No. 73, dated August 28, 1959.

(k) Plaintiff's collective exhibit 13: Secretary of Treasury, Resolution No. 167, dated November 12, 1959, and No. 168, dated November 17, 1959.

(l) Plaintiff's collective exhibit 14: Decree No. 2120/60, dated February 24, 1960.

(m) Plaintiff's collective exhibit 15: Decree No. 3696, dated April 8, 1960.

(n) Plaintiff's collective exhibit 16: Decree No. 6309, dated July 27, 1961. That said documents together with said translations may be admitted in evidence herein and marked as indicated above.

6. That plaintiff's exhibits 1 through 16 heretofore referred to, are attached hereto and made a part hereof.

7. That the appraised United States value of the involved merchandise of $3.9937 per dozen tins net packed, includes a so-called retention charge; that the sole issue herein is whether said retention charge should be deducted from said United States value as a necessary expense from the place of shipment to the place of delivery; that if said retention charge is properly deductible from said appraised United States value, said United States value exclusive of said retention charge equals $3.6894 per dozen tins net packed; that plaintiff does not challenge any of the other elements entering into the computation of said appraised United States value.

8. That the instant appeal for reappraisement may be submitted for decision upon this stipulation and the incorporated exhibits, the same being limited to the merchandise and the issues described hereinabove and abandoned in all other respects; that plaintiff may have thirty days from the date of notice of approval of this stipulation within which to file its brief; that defendant may have thirty days from the date of filing of plaintiff's brief within which to file its brief.

Plaintiff filed a brief. Defendant filed no brief, and instead filed the following, which was entitled a "NOTICE":

PLEASE TAKE NOTICE that this office will not file a brief in the above entitled case in reply to plaintiff's brief herein, as we acquiesce that the Argentine retention charge "is a necessary expense from the place of shipment to the place of delivery, and as such is allowable as a deduction from United States selling price in the computation of United States value", as contended for at page 14 of plaintiff's brief filed herein.

In appeals to reappraisement, it is the duty of the court to decide what the valuation is and to make proper findings underlying that decision.

The parties have now filed, at the court's request, a memorandum comparing the principal features of the 1955–1957 and 1959–1961 Argentine retention systems. The earlier (1955–1957) effectuated the charge at issue in *United States* v. *International Packers, Limited, supra*. The later (1959–1961) effectuated the charge at issue here.

The parties, in their joint memorandum, agree that the incidence of the charge has been shifted, so that in the new system it falls on the exporter of any merchandise which appears on the so-called controlled list. They also agree that, at the time of this exportation, the charge was payable prior to export shipment.

My examination of the record confirms these changes, and also that the instant beef appears on such list.

Scrutiny of the documents received as exhibits discloses that the governmental and fiscal objectives of the second system do not differ significantly from the objectives of the first system.

In the earlier system, payment of the charge was indeed obligated in advance of export; but it was payable by retention of the charge from the proceeds of foreign exchange received in the export transaction. In the second system, as effective with respect to this exportation (there were some subsequent amendments), the Argentine Government required the exporter to pay into the Government "Stabilization Program" account a specified percentage of the value of controlled merchandise to be exported. This advance payment *by the exporter* was a condition precedent to issue of the export license that was required before the merchandise could be shipped abroad.

In the earlier *International Packers* case, *supra*, I refrained from ruling whether the retention of a charge out of foreign exchange proceeds was or was not, under Argentine law, an export tax. It seemed to me unnecessary to rule on that issue.

Here, there is no retention out of foreign exchange proceeds. To call this charge a retention would appear to be a misnomer. Prior to receipt of foreign exchange, and indeed prior to export, the exporter was required by the Argentine Government to make payment of the charge. This would appear to be an export tax. Whether directly levied on the merchandise or levied as an excise for the license to export, it is unnecessary to decide.

An export tax is a necessary expense from the place of shipment in the country of export to the place of delivery in the country of importation. As such, it is an expense for which section 402a(e) authorizes deduction from United States price in arriving at United States value.

I find as facts:

1. That the merchandise of this appeal consists of 1,400 cartons of canned roast beef, packed in cases of 24 cans, of 12 ounces each, exported from Argentina on August 10, 1959, and entered at the port of Boston.

2. That canned roast beef is an article specified in the final list of articles published by the Secretary of the Treasury, pursuant to the Customs Simplification Act of 1956, which became effective on and after February 27, 1958.

3. That, at the time of exportation of this merchandise, such or similar merchandise was not freely offered in the principal markets of Argentina in the usual wholesale quantities and in the ordinary course of trade for sale to all purchasers, either for consumption in Argentina or for export to the United States.

4. That, at the time of exportation, and effective on the date of such exportation, the Argentine Government had established controls over the exportation from Argentina of certain merchandise, including this merchandise, and in connection with and as part of such controls required the exporter to pay, and the exporter did pay, to the Argentine Government "Stabilization Program" account a specified percentage of the value of this merchandise.

5. That the appraiser, in computing United States value of this merchandise under section 402a(e), appraised the merchandise at $3.9937 per dozen tins and refused to allow deduction of the amount paid by the exporter to the Argentine Government "Stabilization Program" account.

6. That it is stipulated by the parties that, if the amount paid by the exporter to the Argentine Government "Stabilization Program" account is held to be deductible in arriving at appraised value, the United States value is $3.6894 per dozen tins, net, packed.

I conclude as a matter of law:

1. That the law applicable to valuation of this merchandise is section 402a, Tariff Act of 1930, as amended.

2. That, at the time of exportation of this merchandise from Argentina, there was no foreign value or export value for the canned roast beef, subject of this appeal, as such values are defined in section 402a.

3. That United States value, as defined in section 402a(e) of the Tariff Act of 1930, as amended, is the basis of value for appraisement of this merchandise.

4. That the amount paid by the exporter to the Argentine Government "Stabilization Program" account is an export tax and, as such, is a necessary expense from the place of shipment in the Argentine to the place of delivery in the United States, which is allowable as a deduction from United States selling price in computing United States value of the merchandise.

5. That the United States value of these 1,400 cartons of canned roast beef is $3.6894 per dozen tins, 12 ounces, net, packed.

6. That the value of entered merchandise, other than these 1,400 cartons of canned roast beef, is the appraised value.

Judgment will be entered accordingly.